UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BROWN,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:15-cv-1430-WBS-CKD<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I. BACKGROUND

Plaintiff, born April 12, 1964, applied on December 27, 2011 for DIB and SSI, alleging disability beginning October 21, 2010. Administrative Transcript ("AT") 138-39, 158-59, 231-43. Plaintiff alleged he was unable to work due to arthritis and pain in his knees and ankles. AT

////

////

1

260. In a decision dated January 27, 2014, the ALJ determined that plaintiff was not disabled.[1]

AT 28-39. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. For purposes of the claimant's application for benefits under Title II of the Social Security Act, the claimant remains insured through December 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity after October 21, 2010, the alleged onset date.
>
> 3. The claimant has the following severe impairments: mild degenerative disc disease of the lumbar spine, mild degenerative disc disease of the cervical spine, osteoarthritis of the bilateral knees, and osteoarthritis of the bilateral ankles.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).
>
> 6. The claimant is capable of performing past relevant work as: a security guard, a merchant patroller, a tow truck driver, an auto detailer, a machine washer, and a laundry worker. The work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from October 21, 2010, through the date of this decision.

AT 39.

## II.  ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) rendered a decision in this action despite the fact that plaintiff did not provide an adequate waiver of representation; and (2) failed to fully and fairly develop the record. Plaintiff also contends that the Appeals Council erred by failing to review the additional medical submissions provided to it by plaintiff in connection with its review of the ALJ's decision.

## III.  LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV.   ANALYSIS

    A.   The ALJ Provided all Required Disclosures Such that Plaintiff's Waiver of Representation was Effective

First, plaintiff contends that the ALJ erred because she did not obtain an adequate waiver of representation from plaintiff at the administrative hearing before allowing plaintiff to proceed in this action pro se. More specifically, plaintiff asserts that while the ALJ provided all required disclosures and plaintiff waived his right to representation in writing after being apprised of his rights, the ALJ still erred because plaintiff's mental capacity rendered him incapable of making an informed waiver in the absence of additional measures that the ALJ did not take.

In Roberts v. Comm'r of the Soc. Sec. Admin., the Ninth Circuit Court of Appeals held that an ALJ is not required to provide any disclosures beyond those contained in 42 U.S.C. § 406(c) before obtaining a valid, informed waiver by a claimant of his or her right to representation. 44 F.3d 931, 934 (9th Cir. 2011). Section 406(c) requires the Commissioner to notify each claimant in writing "of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security" and to "advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." In reaching its holding that these were the only required disclosures, the Ninth Circuit rejected the argument that an ALJ is required to give claimants additional

4

information and make additional assurances before obtaining a waiver based on the Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX") I-2-6-52, "which states that the ALJ 'should ensure on the record' that an unrepresented claimant 'has been properly advised of the right to representation and . . . is capable of making an informed choice about representation.'" Roberts, 44 F.3d at 934 (quoting HALLEX I-2-6-52). The Court rejected this argument because "HALLEX . . . does not 'carry the force of law and [is] not binding upon the agency.'" Id. (quoting Parra v. Astrue, 481 F.3d 742, 749 (9th Cir. 2007)).

Here, plaintiff proceeded through the administrative process with the assistance of a non-attorney representative until that representative withdrew from representation about 10 days prior to the administrative hearing before the ALJ was to take place. AT 227. Throughout the course of the administrative process, plaintiff received written disclosures from the Commissioner informing plaintiff of his right to obtain representation and of the availability of free legal assistance organizations. AT 26, 163, 176. Furthermore, at the beginning of the administrative hearing in this matter, the ALJ advised plaintiff of his right to representation in the following manner:

> So, [plaintiff], before I can continue I need to explain to you your rights to representation. Obviously you had a representative up until recently, and unfortunately, that representative withdrew.
>
> So essentially, you have the right to be represented by an attorney or a nonattorney. That representative can help explain your rights to you, they can make any motions or give any notice on your behalf to me, they could help prepare you for the hearing and represent you during that hearing.
>
> That representative may not charge a fee or receive a fee unless we approve it. However, some may charge fees for obtaining medical records. Some legal service organizations offer legal representation free of charge if you qualify. You also have the right to proceed without a representative. If so, I'll ensure that your due process rights are protected and we'll get any evidence on your behalf that may be needed.
>
> So my very first question to you today is what would you like to do?

5

AT 95-96.  Plaintiff responded with the following: "Ma'am, I've been waiting so long and been going through so much I['m] just going to go ahead and get it over with."  AT 96.  Thereafter, the ALJ explained to plaintiff that he needed to sign a waiver form to effectuate his waiver and reiterated to plaintiff that doing so would serve as a recognition that he understood his right to representation but decided to waive it with regard to further proceedings.  Id.  Plaintiff then signed the form and the ALJ explained to plaintiff that she would "protect [plaintiff's] due process rights and [would] obtain any evidence on [plaintiff's] behalf."  AT 97, 229.  After this exchange, the ALJ commenced the administrative hearing and inquired into plaintiff's education and work history, the impact of plaintiff's physical impairments on his daily functioning, and consulted with a vocational expert regarding whether plaintiff could still perform work given his functional limitations.  AT 97-123.

As an initial matter, plaintiff concedes that the ALJ provided all statutorily required disclosures during the hearing before plaintiff signed the waiver form, thus effectuating a sufficient waiver of representation pursuant to the Ninth Circuit Court of Appeals' holding in Roberts.  Nevertheless, plaintiff argues that the ALJ was required to inquire further than she did into whether plaintiff was capable of providing an informed waiver of his right given that plaintiff had not received a high school diploma and provided testimony indicating that he may have suffered from mental limitations that prevented him from fully understanding the ALJ's disclosures and appreciating the implications of his consent to waive representation.  Plaintiff further asserts that the ALJ should have done more to emphasize the benefits of having adequate representation.

In essence, plaintiff requests that the court hold the ALJ to an even higher standard than that set forth in HALLEX I-2-6-52.  However, plaintiff presents no persuasive authority for the creation of such a standard.  Indeed, the binding case law in the Ninth Circuit regarding pre-waiver disclosures cuts against the standard plaintiff proposes.  In Roberts, the Ninth Circuit Court of Appeals held that the standard set forth in HALLEX I-2-6-52 — which is less onerous than the standard plaintiff proposes — does not carry the force of law and that an ALJ is only required to provide the disclosures contained in 42 U.S.C. § 406(c) before obtaining a valid,

1    informed waiver. 644 F.3d at 934. As plaintiff concedes, the ALJ here provided all such

2    disclosures and even went beyond those requirements by providing plaintiff with additional

3    verbal disclosures during the hearing.

4         Furthermore, even if a rule were established requiring an ALJ to provide additional

5    disclosures and obtain further information when there is evidence that a claimant may not be

6    capable of providing an informed waiver due to a learning disability or other mental impairment,

7    the facts presented in this action would not have mandated the ALJ to provide such disclosures

8    because there is no evidence that plaintiff was incapable of providing an informed waiver. First,

9    the record does not necessarily support plaintiff's contention that he did not obtain a high school

10   education. During the administrative hearing, plaintiff stated that he "didn't graduate" high

11   school because he "got out of there in the last month of school." AT 104. However, upon further

12   questioning, plaintiff testified that he "graduated" high school, but did not receive a diploma and

13   that he "got a blank thing" instead, which he believed was a certificate of completion. Id. While

14   plaintiff's testimony regarding his education was equivocal, the ALJ reasonably interpreted it to

15   mean that plaintiff received a high school education. AT 38. Even if a different interpretation

16   could be given to plaintiff's testimony, the court is required to uphold the ALJ's rational

17   conclusion. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

18   susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

19   upheld."). Accordingly, plaintiff's argument that his lack of a high school education should have

20   somehow alerted the ALJ that plaintiff did not have the mental capacity to provide an informed

21   waiver of his right to representation lacks merit.

22        Moreover, even assuming that plaintiff made it clear that he did not obtain a high school

23   education, the mere fact that plaintiff did not achieve such a level of education does not

24   necessarily demonstrate that plaintiff had a mental impairment that precluded him from making

25   an informed waiver of his right to representation after the ALJ provided him with the required

26   disclosures. There is evidence in the record indicating that plaintiff did not take special education

27   classes while he was in school, AT 261, and there is no evidence that he struggled academically

28   in a manner that would indicate that he lacked the mental capacity to provide an informed waiver.

1  Furthermore, at no point in the administrative process did plaintiff allege that he had a learning
2  disability or some other mental impairment that would call into question his ability to provide an
3  informed waiver.  Indeed, plaintiff's alleged impairments were almost exclusively physical in
4  nature, focusing on allegations of pain resulting from plaintiff's spine, knee, and ankle
5  impairments and the medical records plaintiff submitted in support of his applications.  See AT
6  260.  The minimal medical evidence in the record regarding plaintiff's mental status indicates that
7  plaintiff suffered from a mood disorder and claimed he suffered from auditory hallucinations.  AT
8  417, 444.  The ALJ considered this evidence and determined that plaintiff's mental impairments
9  were non-severe — a determination plaintiff does not contest.  AT 31-33.

10  Furthermore, nothing in the record suggests that plaintiff did not receive a full and fair
11  hearing, that the record was in some way underdeveloped, or that plaintiff was otherwise unduly
12  prejudiced due to his brief time proceeding in this action without representation.  In fact, after the
13  administrative hearing, the ALJ ordered plaintiff to attend a consultative orthopedic examination
14  with Dr. Boporai, a specialist regarding plaintiff's alleged physical impairments, to ensure that
15  the record regarding plaintiff's physical impairments was fully developed before rendering her
16  decision.  See AT 449-60.

17  In short, the ALJ obtained plaintiff's waiver of representation in manner that comported
18  the mandates set forth in the Ninth Circuit Court of Appeals' case law and plaintiff fails to
19  highlight any evidence that would have reasonably called into question whether plaintiff had the
20  capacity to provide an informed waiver of his right.  Accordingly, the AJ did not err by
21  proceeding with the administrative process after plaintiff waived his right to representation in
22  writing.

23  B.  The ALJ Fully and Fairly Developed the Record

24  Second, plaintiff argues that the ALJ failed to fully and fairly develop the record in this
25  matter.  Plaintiff contends that the medical record was inadequate for the ALJ to render a proper
26  decision because she did not make an effort to obtain the results of a consultation with Dr. Borde
27  that was alluded to in a two-page referral document in the record.  Plaintiff further contends that
28  the ALJ failed to seek medical opinions from either Dr. Fagan or Dr. Borde, two of plaintiff's

8

treating physicians. Finally, plaintiff asserts that the ALJ failed to obtain any follow up evidence regarding plaintiff's education level.

The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). "When the claimant is unrepresented, . . . the ALJ must be especially diligent in exploring for all the relevant facts." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

It is well established that a claimant bears the burden of providing medical and other evidence that support the existence of a medically determinable impairment. Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits."). Indeed, it is "not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." Yuckert, 482 U.S. at 146 n.5.

Nevertheless, as the Ninth Circuit Court of Appeals has also explained:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant. When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts . . . The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry.

Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted). In short, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150.).

/////

/////

1    "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's
2    physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping
3    the record open after the hearing to allow supplementation of the record." Id.  However, as some
4    courts have persuasively observed, the ALJ "does not have to exhaust every possible line of
5    inquiry in an attempt to pursue every potential line of questioning.  The standard is one of
6    reasonable good judgment." Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997) (citation
7    omitted).

8        Plaintiff's first assertion that the ALJ failed to fully and fairly develop the record because
9    she did not try to obtain the results of the cardiac evaluation performed by Dr. Borde is meritless.
10   Plaintiff contends that because Dr. Fagan's referral form in the record noted an abnormal EKG
11   reading and referred plaintiff to Dr. Borde for a cardiac consultation means that the record was
12   inadequate to determine whether plaintiff was disabled absent the results of Dr. Borde's cardiac
13   evaluation.  However, the mere existence of a two-page form in the record indicating abnormal
14   EKG results and referring plaintiff for a cardiac evaluation did not render the record ambiguous
15   or left it so inadequate as to require further development regarding plaintiff's cardiac condition.
16   See AT 469-70.  There exists no other evidence in the record indicating that plaintiff had a
17   cardiac impairment and plaintiff's own claims largely centered on alleged spinal, knee, and leg-
18   based musculoskeletal impairments rather than complications arising from a cardiovascular
19   condition.  The burden was on plaintiff to provide evidence sufficient to establish the existence of
20   a cardiac condition. Bowen, 482 U.S. at 146; 20 C.F.R. § 404.1516 ("If you do not give us the
21   medical and other evidence that we need and request, we will have to make a decision based on
22   information available in your case."); 20 C.F.R. § 416.916 ("You . . . must co-operate in
23   furnishing us with, or in helping us to obtain or identify, available medical or other evidence
24   about your impairment(s).").  Even after plaintiff obtained representation by his current counsel,
25   he apparently did not submit the results of Dr. Borde's consultation as part of the additional
26   evidence he provided the Appeals Council in connection with his challenge of the ALJ's decision.
27   See AT 5-6.  In short, the record did not provide sufficient evidence to bring into issue the impact
28   of a cardiac condition, let alone trigger the ALJ's duty to further develop the record in the manner

plaintiff asserts.

Plaintiff's assertion that the ALJ was required to obtain an opinion from either Dr. Fagan or Dr. Borde regarding the functional impact of plaintiff's impairments in order to satisfy her duty to fully and fairly develop the record is similarly baseless. Under the regulations, an ALJ may decide to obtain a consultative examination under certain circumstances, such as when the record as a whole is insufficient to allow a proper determination. See 20 C.F.R. §§ 404.1519a, 416.919a. A claimant's treating source is ordinarily the preferred source to conduct an examination to determine the nature and extent of a claimant's impairments. Id. §§ 404.1519h, 416.919h. However, nothing within the regulations requires an ALJ to obtain a consultative examination from a treating source, let alone a specific treating source advanced by a claimant. To be sure, the regulations leave it within an ALJ's discretion regarding whether to order a consultative examination at all. See id. §§ 404.1519a, 416.919a. Here, the ALJ obtained a consultative orthopedic examination from Dr. Boporai, who was a specialist regarding plaintiff's claimed physical impairments. AT 449-60. Dr. Boporai reviewed plaintiff's medical records developed up through the December 2, 2013 examination date, conducted a comprehensive physical examination of plaintiff, and opined on plaintiff's physical limitations on a function-by-function basis. Id. The ALJ also obtained opinions from two State agency reviewing physicians. AT 124-37, 140-56. All three physicians opined similar functional limitations and the ALJ's residual functional capacity ("RFC") determination fully encompassed those limitations. In short, there were multiple unambiguous opinions in the record from which the ALJ could and did draw in determining plaintiff's RFC. Accordingly, the ALJ did not err by not seeking further opinions from Dr. Borde or Dr. Fagan.[2]

---

[2] Plaintiff also appears to argue that it still would have been preferable for the ALJ to have obtained a consultative opinion from either Dr. Borde or Dr. Fagan because those two physicians were treating physicians while Dr. Boporai only examined plaintiff on one occasion. However, at least with regard to Dr. Borde, the record shows only that plaintiff was referred to him by Dr. Fagan for a cardiac evaluation. AT 469-70. There is no evidence in the record that Dr. Borde ever actually examined plaintiff or that a treating relationship was established. Furthermore, even assuming Dr. Borde did examine plaintiff, it would have been on a single occasion, therefore undermining plaintiff's assertion that Dr. Borde would have been better equipped than Dr. Boporai to provide an opinion based on a greater familiarity with plaintiff's impairments. Dr.

1  Plaintiff's claim that the record was not adequately developed regarding his level of
2  education is also without merit.  As discussed above, the ALJ reasonably interpreted plaintiff's
3  testimony regarding his education to mean that plaintiff completed high school.  The record
4  regarding this area of inquiry was not underdeveloped.  Moreover, plaintiff never alleged having
5  a learning disability or any other, similar mental impairment at any point throughout the course of
6  the administrative proceedings that would have potentially brought plaintiff's level of education
7  and academic achievement into contention such that further development on that subject would
8  have been necessary to fairly assess plaintiff's claims.

9  Furthermore, plaintiff's more general argument that the record was somehow inadequate
10 for the ALJ to properly render a decision is without merit because the record here was sufficiently
11 developed such that the ALJ's decision was based on substantial evidence.  The record contained
12 numerous treatment records regarding plaintiff's alleged physical impairments, opinions from
13 examining and reviewing physicians regarding the functional impact of plaintiff's alleged
14 impairments, and testimony from both plaintiff and a vocational expert.  This evidence provided
15 the ALJ with substantial evidence on which she could base her determination that plaintiff was
16 not disabled within the meaning of the Act.  For example, the objective medical evidence in the
17 record regarding plaintiff's musculoskeletal system — which formed the primary basis of
18 plaintiff's complaints regarding back, knee, and leg pain — generally demonstrated that plaintiff
19 had no more than mild symptoms that were well controlled.  See, e.g., AT 315, 329, 343, 387,
20 445, 458, 477.  Similarly, there were multiple opinions from both examining and reviewing
21 physicians in the record that suggested limitations commensurate with the ALJ's RFC
22 determination that plaintiff could perform the full range of medium work as defined in 20 C.F.R.
23 §§ 404.1567(c), 416.967(c).  See AT 124-37, 140-56, 449-60.  The ALJ properly relied on these
24 opinions to provide substantial support for her RFC determination, which in turn properly
25 supported her overall decision finding plaintiff not disabled.

---

Boporai's opinion was based on a review of plaintiff's medical records from throughout the relevant period — which generally supported his opined limitations — and was supported by the opinions of two other physicians.  Accordingly, there was substantial opinion evidence in the record to support the ALJ's RFC conclusion even absent the opinions of Dr. Borde or Dr. Fagan.

In sum, the record was fully and fairly developed by the time the ALJ issued her non-disability decision and there existed substantial evidence in the record on which the ALJ based that determination. Accordingly, the ALJ did not fail to fully and fairly develop the record.

### C. The Appeals Council did not Fail to Consider Plaintiff's Additional Evidence

Finally, plaintiff contends that the Appeals Council failed to consider the additional medical records he submitted to it on April 12, 2015 in connection with its review of the ALJ's decision. Specifically, plaintiff asserts that the Appeals Council did not consider the following documents plaintiff submitted in connection with his appeal of the ALJ's decision: (1) treatment notes from Queen of the Valley Rehabilitation Services dated November 18, 2013 through December 23, 2014, and (2) treatment notes from Solano County Health and Social Services dated October 30, 2013 through January 6, 2014. However, a review of the Appeals Council's decision shows that it did consider that evidence. Both sets of records plaintiff claims were submitted but not considered were included by the Appeals Council in its exhibits list and its order. AT 5-6. Moreover, the Appeals Council specifically stated in its denial of review that it considered "the additional evidence listed on the enclosed Order of Appeals Council," which included both sets of records. AT 1, 6. Accordingly, plaintiff's argument that it did not consider this evidence is frivolous.

Furthermore, a review of the additional medical records shows that they do not undermine the ALJ's substantially supported decision finding plaintiff not disabled. As discussed above, there existed substantial evidence in the record to support the ALJ's decision. The two sets of additional treating records plaintiff submitted to the Appeals Council that form the basis of plaintiff's argument largely consist of physical examination notes exhibiting generally normal to mild results and recommendations that do not undermine the determinations the ALJ made in her decision such that they were no longer supported by substantial evidence. See AT 471-520. Accordingly, plaintiff's request for remand based on the additional treatment records is groundless.

/////

/////

V. <u>CONCLUSION</u>

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 21) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 21, 2016

_/s/ Carolyn K. Delaney_
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 brown1430.ss